The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the court is now sitting. God save the United States and this Honorable Court. Be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals on this 80th anniversary of the attack on Pearl Harbor. I'm probably the only person in the courtroom who was alive at the time. But, we have three good cases, and in the first case, Porter v. White, number 20, face 13, Mr. French, representing Mr. Porter. Good to have you with us, sir. Thank you, Your Honor, and it's good to be here. May it please the court. It's undisputed in this case that Juror Treacle answered three voir dire questions dishonestly, and that the information that he failed to disclose went directly and was directly relevant to the issue of his ability to be impartial in what was at the time a capital murder trial involving the shooting death of a police officer. When viewed under the totality of circumstances, the information that Juror Treacle withheld and the reasons he gave in his testimony for withholding that information demonstrate that he lacked both the capacity and the will to decide the case solely on the evidence. It's well established in the Fourth Circuit, this court held in U.S. v. Jones, that trial courts have a very broad discretion in exercising and making the determination as to whether or not to excuse a juror for cause. And under Virginia law, under Supreme Court Rule 3A.14, courts have the ability to exclude any juror for any reason if the court has any reason to believe that the juror might not give a fair and impartial trial. And under long-standing Virginia law, if there's any reasonable doubt about a juror's qualifications to be impartial, those doubts... Well, the fact that the district court didn't find that the juror intentionally withheld information during voir dire. Well, we believe that those findings, first of all, were both highly speculative and also internally contradictory. So were they clearly erroneous? We believe that they were clearly erroneous. That's what they have to be, is it not? For you to prevail today, you've got to convince us that there was clear error in that regard. In that regard? In the determination that the juror was credible. And that's what Judge Hudson said. That's correct, Your Honor. And it has to be clear error. With respect to those specific findings, and if I could address those specific findings as well. No, but for you to prevail, there has to be clear error. There has to be. Well, I think there's a mix. So whether or not he intentionally withheld information or whether he credibly testified that the information that he failed to disclose wouldn't have had any impact on his ability to be impartial. But for you to prevail, the determination finding by Judge Hudson that the witness was credible, the juror witness was credible, has to be clearly erroneous. Yes, I believe that that's correct. How was it clearly erroneous? Well, first of all, with respect to the credibility findings that the juror testified that this information would not have impacted my ability to be impartial. As a threshold matter, at least twice in the district court's opinion, the district court noted that juror Treacle testified that the information he failed to disclose did not, in fact, impact his ability to be impartial. Which, from our perspective, is prohibited under Rule 606. How would the district court know that? Well, we objected at, during the proceedings, we objected on the basis of speculation. Right. But when the other side, but I would say even more so, aside from just those particular findings about whether, what the juror testified to was that the information he failed to disclose would not have had any impact on his ability to be impartial. And I would suggest to the court that that is ranked speculation. The only way that the juror could, the juror gave that testimony 12 years after sitting in voir dire, after sitting, sat through an entire trial, having voted to convict the defendant, and having voted to recommend the death penalty, and then made those comments in the context of a proceeding that was directly involving why he failed to answer those questions honestly. So we would argue that those credibility determinations and those factual findings are clearly erroneous when we couple that with all the other information that he testified to at trial. And even if we credit, even if we say that his testimony was credible, the only thing that would have been credible was the fact that he believed 12 years later that he could have been fair and impartial. It doesn't mean that he was at that time. It simply means that he believed that after the fact. The district court in analyzing the second prong of McDonough limited its analysis to whether a valid basis for a four cause challenge existed to whether or not we had established either actual bias or implied bias. The court didn't provide any consideration at all to the discretionary authority that courts have. Counselor, can I ask you a question? Because I found this part of your brief somewhat confusing. So under McDonough's second prong, you have to show that what would have been the correct response on voir dire would have given rise to a four cause challenge, a valid four cause challenge, right? Yes. That's what it says. Well, that's in McDonough, right? That it would have provided a valid basis. So are you arguing that not not the fact that he on your account that he lied at four gear, but the actual information? Yes, I have not one but five relatives in law enforcement. Is your position that had he said that that would have given rise to a valid four cause challenge? Yes. And what is the case law support for that? I couldn't find any. Well, the case law doesn't support that it's an automatic or a required per se disqualification, but that's under an implied bias analysis. What the court also has the authority to do is to look and determine whether or not the information that's being provided. I think the way one court talked about it was bespeaks a risk of a lack of impartiality. But is there any case ever saying that because you have law enforcement relatives, that means you are disqualified from sitting on the jury? I haven't found anything that but I believe the case law talks about in that it frames that in terms of a per se disqualification as opposed to if if this is a this is a individual who had five family members who were long for who are engaged in law enforcement involved in law enforcement. And in a capital murder trial involving the shooting death of a police officer. It's hard to then go back and subjectively say, well, did this, you know, who who would have moved with the prosecution or rather with the defense have moved to disqualify the jury in that case. But I think that that moved all they wanted. But the question is whether that would be they would be discharged for calls. And all that information might have been pertinent to whether you exercise a discretionary challenge or something. I think one of the one of the issues that I think is important is to understand that when we're talking about McDonough, if that decision that determination is being made within the context of a case where the juror has already withheld information. So the court, this is a First Circuit case, but in the Sampson case, essentially said that the real question in terms of determining is there a valid basis for a forecast challenge under that second element of McDonough is whether in the totality of circumstances, the information that was withheld. And the reason why it was withheld would under the totality of circumstances would lead to the court to determine that this that this juror was not able to be impartial here. The reason was he didn't remember it. And that was it. Well, I would I think the facts, Your Honor, is that what he actually said is I just didn't think very hard. These were questions. These were simple, short, straightforward questions that specifically asked about family members. And yet juror Treacle testified when he got into court. I didn't think about family members. And didn't he also testify that right before the trial, his brother, who was the police officer in the county in question, told him, if you tell that I'm a police officer, you won't get on the jury. He absolutely did, Your Honor. And that was another point we wanted to make. And that's a point that the district ability to think that for him to say that he didn't recall that it does. And it also flies in the face of the notion. I think the district. But the credibility was determined in his favor by the finder of fact. It was that's what that's what that's the issue you got here is. How you say how we find that he was incredible when the judge said he's credible and he sat on the witness stand and the judge saw him and listen to him. And he said, you heard the evidence, all of it. And your honor, I would I would again argue that what he found credible was essentially. That's what you have to argue. That's what this case comes down to. And under the law, though, we give deference. We have to give deference under this clear error standard to the district court, to the trial court, to the finder of fact. I understand that, Your Honor. I think one of the one of the issues that's important to understand is that, yes, is while there may have been some evidence to support the trial court's decision. And the question for this court on a clear, clearly erroneous standard is, does it does the record as a whole give this court the firm conviction that a mistake was made? I think when we look at the other testimony, we have juror Treacle, juror Treacle's brother telling him before he goes to when he learns that he had been summoned for jury service, telling him that if you reference me, you may not get picked for jury service. Can I ask you just a question about the chronology of how this information came out? As I understand it, the first juror Treacle gives his deposition where he says, I, of course, I didn't think about my brother. Why would I think about my brother? And then, am I right that after that, the brother shows up at the hearing and says, actually, I talked to him right before Vardir and told him you might not get picked if you talk about my law enforcement background. So that when juror Treacle was giving his deposition, he didn't know that his brother was going to come in and cut the legs out of everything he said, right? That's correct. And we asked juror Treacle during his deposition who he told about his jury service.  Did the district court address this sort of fatal inconsistency at all? No. The court made reference to Pernell Treacle's testimony, but did not address the consequences of it. And that's part of our point of why we think the court can find these findings clearly erroneous, because much of what juror Treacle testified to was very contradictory. On the one hand, he says, I, in the district court, found that he steadfastly believed that he mentioned Pernell on Vardir. At the same, literally in the same paragraph of the district court's opinion, the district court quotes his testimony of saying, I don't remember thinking about my brother, Pernell, when I was in the courtroom. He talks about the court found that juror Treacle had said, I sort of blocked my brother, Ronnie, Ronald Treacle, out of my mind. Ronald was the one with a long history of criminal involvement. I would argue that it strains credulity to believe that anybody could forget and block a brother out of their mind, particularly when the testimony is that the very reason he blocked his brother out of his mind is because he was always getting in trouble. He was always going in and out of jail. He was going around threatening people. The notion that there were three Vardir questions, and I think what we have to take into consideration is that when we're considering the court's analysis or finding that this was simply inadvertent, is that he failed to disclose multiple family members in response to three different Vardir questions. Those Vardir questions specifically asked about family members, and yet he says, I didn't think about family members with respect to the Vardir question about arrests. He says, I knew I had never been in trouble, and so I only thought about myself. Can I ask you a question that reminds me? It seemed to me that at different parts of your brief, you were talking almost about two different theories of what bias might look like. One is sort of the traditional, I think what we usually think of, like this juror had an ax to grind. He wanted to get on the jury because he had a predisposition about how the case should come out. But the other, and I think you quote this in your brief, is that just sort of a lack of capacity or willingness to follow the court's instructions to take this job seriously. You're a juror in a death case. You're not listening to the questions. You're not answering honestly. You're just the Ninth Circuit in the Dyer case talks about, like, this just introduces this kind of random element onto a jury, and we can't have that. Are you arguing both of those, basically? Well, I think what we're arguing is that I think the testimony, the facts do merit an inference of actual bias. However, I think the key issue here is really that issue, which is, and that's what the Sixth Amendment speaks to. It's an impartial jury, and impartiality is based on whether the juror has the capacity and the will to follow the law. And in this case, we have a juror who was seated, and I think it bears emphasis. At that time, this was a, he was on a jury panel in a capital murder case involving the shooting death of a police officer. I would argue that would capture the attention of most reasonable individuals, that they would listen very carefully to the questions that are being asked of them. He demonstrated on that very first day that he was incapable of listening to the instructions that the court gave, despite the fact that he was under oath, despite the fact that the question specifically asked information about family members. I think he demonstrated very clearly. You don't have to speculate or hypothesize. It's as plain as day. He was not capable of serving in an impartial way. If a juror doesn't listen to the questions and admittedly says, I didn't think very hard, other jurors throughout the voir dire were pointing out things like, I have a cousin who's a police officer in D.C. Well, Juror Treacle had two cousins who are police officers just a hop away in Philadelphia. That didn't apparently trigger any recollection in his mind. I see I'm out of time. Thank you very much, Mr. French. Thank you. Mr. Billigan? Billigan, yes, thank you. I'm sorry I mispronounced your name. It was good to have you here. Thank you, Your Honor. May it please the court, Matthew Billigan, senior assistant commonwealth attorney, assistant attorney general. Commonwealth attorney has been years to go for the warden. I think it unfairly characterizes the district court's opinion to say that the only thing it looked at was whether there was a per se, grounds for per se exclusion. He did, Judge Hudson did follow the direction in folks in the cases it cites to consider that and find there in fact was no per se exclusion, but went well beyond that, found that there was no evidence of bias from the answers given at voir dire and from the much more extensive answers given and produced at the hearing, and found that all that information taken as a whole did not show that the juror was biased, did not have any actual bias in the event, was able to hold fairly between the parties. And while it is focused in the second step of the Donna analysis on floor cause and mandatory floor cause strikes, the district court did address what's been cited under the state grounds for strikes for cause in the seventh ground, the ability in the view of the trial court of the juror to follow instructions and to generally act impartially. Mr. Duggan, is there anywhere in the record that indicates that the trial court would not have excused the juror for cause if he had answered the questions honestly? The district court found that repeatedly. I was asking about the trial court. Is there anywhere in the record that the trial court would not have excused him if he had answered the questions honestly? The trial court would not have granted a strike for cause based on the information he didn't provide? I'm sorry, I'm not sure I appreciate the question. How do we know that the trial court would not have struck this juror if he had answered all those questions honestly? Of course, the holding of this court on the remand was we don't know what his answers would have been until we had this evidentiary hearing and found out. So I don't believe that was ever presented to the trial court, how it might have ruled. And what did the district court say about that? The district court said that the various grounds, I'll go into more detail, but in each case it said that these would not constitute grounds for a for cause discharge. Both because there is no per se rule based on any of these categories of information and because in listening to the juror, listening to his explanations, he found credible that he was not withholding information out of any improper motive, out of any desire to sit on the jury, or out of any bias. And therefore there was not ground to exclude him. And what did the district court say about the discrepancy between the juror's testimony and his brother's testimony about that conversation they had before he went to be a juror on this trial? Broadly, the district court said that it found credible Treacle's explanations for what he did. Specifically, it noted in one footnote that juror Treacle had said that he only told his wife he was sitting on the jury, that he hadn't had this conversation with his brother. So the district court found the brother was not credible, but the juror was credible? The district court found the juror was credible. I don't believe he made any specific credibility findings about Purnell Treacle. Right. Does the government have a theory for how you can reconcile juror Treacle's testimony that when he was sitting in the courtroom at Fort Adair, he simply never thought about his brother? There's a question, do you have law enforcement relatives? It just didn't occur to him to think about his brother. How do you reconcile that with the brother's testimony that shortly before that, the brother talked to Treacle about the fact that he is in law enforcement in connection with his jury service and tells him if they find out that I'm in law enforcement, they may kick you off the jury. How can both of those things be true? Well, at least two ways. One, Purnell Treacle's recollection could be mistaken, and he didn't have the conversation. So that goes back to Judge Sackler's question. You need us to discredit Mr. Purnell. We have to think he was either being dishonest or was incorrect in his memory of this conversation. Because I don't think the district court made that finding, so I don't see how we're supposed to. The district court didn't make either finding on that. People have different recollections. So what's the other way to reconcile it? The other way you would reconcile it is that Juror Treacle didn't remember the conversation that his brother testified to. That seems, okay, I will just tell you, let me ask you the question this way. Assume for a minute, I don't think that's plausible. I don't believe that Juror Treacle asked to identify law enforcement relatives, thought about his nephew, but not the relative who told him shortly before that, in connection with the jury he's now sitting on, if you mention I'm in law enforcement, they may not seat you on the jury. Let's assume I don't find what Juror Treacle said at his hearing to be plausible. And to the extent the district court credited it, I think that was clearly erroneous. Where does that leave me? Well, that still leaves with the ultimate question in a McDonough case. What about over under actual bias? If I think that he gave a purposefully dishonest answer, ad for adere, and then lied about it at the hearing, is that enough for actual bias or do I still need more? I don't think that's enough for actual bias. It does not identify any motive, any prejudice, any other grounds that would prohibit or give reason to believe he could not sit fairly in the case. And the district court did repeatedly make that finding, that on the whole of the evidence that was produced at the hearing, there simply was not evidence that Juror Treacle was biased, could not have been impartial, or that there were any grounds to excuse him. If you do not believe his recollection, he is perhaps at best a poor historian of family events. Well, I thought you were saying something different, which may be right. He might be an enormous liar. Maybe he lied ad for adere and then lied at the hearing, but that's different from being biased. I understood you to be saying that. Yes, that was my first point. I was moving to something else. I hoped presenting that as the question to answer your question about how we resolve this. He's still not biased. I also think it's a difficult way to view the district court's job here to claim that we've referred this matter to the district court to examine what further questions might have been asked at Bordier 12 years ago, what further answers might have been given to those questions at Bordier 12 years ago, bring in witnesses to ask them to recall what happened 12 years ago, and then ask when they give the answer that the petitioner doesn't think helps his case, to believe we shouldn't believe them because it's 12 years ago. In fairness, counsel, the way to avoid that is if jurors actually answer the questions honestly at Bordier. The reason we have to do this retroactively 12 years later is because juror Treko, for whatever reason, gave untruthful answers to three separate Bordier questions. That's why we have to do this after the fact. I don't think it's really fair to pin that on the defendant. I apologize if I wasn't clear. I don't pin on the defendant, as you say, the idea that we have a McDonough claim in front of us that we need to resolve. What I'm criticizing is the argument offered earlier here this afternoon as I took it, that because their memories, particularly juror Treko's memory, is imperfect and sometimes inconsistent 12 years later, therefore he's lying. It may just be that it's 12 years later. Can I ask you sort of a separate question? Even on the district court's understanding of everything that happened here, and so I call this sort of the best case scenario, there's no intentional nondisclosure. Don't we still have a juror who has basically shown himself either unable or unwilling to follow the rules of a trial? He's not taking seriously the court's admonition to answer truthfully. He says as an explanation for his own answers, I wasn't listening, like they said, family, but I decided that I would just think of the question in terms of myself. I mean, don't we have, and this is from your brief at page 18, a juror who cannot conscientiously apply the law and find the facts? It just doesn't seem like even on the district court's understanding of what happened here, he's just not taking this very seriously. Well, the district court found specifically that there was nothing from which it would conclude that the juror was not capable and willing to decide the case solely on the evidence before him, quoting the Smith case, I think. So we have the finding that Juror Treacle was capable of doing that even with the imperfect recollection now and arguably at the time of Wardere and the information he omitted. The information didn't show bias and the information did not show to the district court's finding that he was unable to follow his duty as a juror and decide the case on the evidence. Well, but on that question, sort of how did he perform as a juror? Could he follow the questions? Did he answer truthfully? The district court sort of doesn't have any better vantage point on that than we do, right? We're both looking at the same cold record of what happened at Wardere. And I guess I understand about deferring to the district court in judging Mr. Treacle's credibility. But there does seem to be no doubt, and the district court doesn't dispute this at all, and I don't think you dispute it, that he answered three questions incorrectly and that his explanation for that was that he wasn't listening or that he sort of interpreted them to be about something other than they were about. I mean, that's just facts on the record. And whether we draw from that that he was able to follow instructions or that he was not able to follow instructions, I don't really see how that's not more a legal question than a factual question. Well, what we've asked the district court to do, what we've asked Manny McConaughey's case for the court to do, is put itself in the position of the court as if it was conducting Wardere, as if the answers had been given that were omitted and making judgments about whether there's grounds for strike for cause. When we do that at trial, those are intrinsically trial court decisions that are entitled to deference. They're making, in this case, the district court is making the same kinds of fact-informed judgments about whether there was grounds for strike, specifically whether there was evidence of bias or evidence of an inability to follow his role as a juror. I'd argue those findings in a McDonough setting are entitled to the same sorts of appellate deference that you would if the Wardere had been done at the time of trial and the trial court had made those same findings. At the bottom of the analysis, it's the Warden's position, Your Honors, that what McDonough is trying to get at, and what all the other rules that we've tried to hammer out to do a McDonough analysis, is whether the flawed initial Wardere allowed a biased or partial juror to sit in violation of the defendant's rights. I think that for the reasons we've discussed this morning and stated in my brief, that the district court's analysis on the absence of grounds for a strike for cause, are there as a per se grounds, are there as a specific grounds on each of the three questions, or on the seventh ground under the state rule where a juror unable to follow his role are correct. But the fundamental question we'd submit is answered by the district court's finding that juror treacle is not shown to be biased, is not shown to be partial, was not shown to have been seated in a way that would interfere with the defendant's right to have a fair, unbiased trial. And I think that's the ultimate finding the district court makes, that is simply its conclusion on the exhibits, the stipulations, and the day of testimony from all the witnesses. He didn't just withhold information on one question. He did it on three questions, and a lot of information. How far does the state's argument go? If there was a juror who withheld information on 10 out of 10 voir dire questions, is that okay as long as he says, oh, you know what, everything about every question y'all asked me slipped my mind. Is that still fine? Or under the totality of the circumstances theory that counsel for the opposing side argues, would we get there then? Three's not enough, but maybe 10 would be? I don't know that there's any magic number. Ten, I think, was the number in Sampson. But the question presented by a Sampson sort of analysis is addressed by the district court. It did say that it considered all the totality of the either false in the case of other law enforcement or omitted information in the case of the other voir dire questions. It did consider all that. It considered the evidence of motives. It distinguished cases like Sampson, one, because there was a finding in some of those cases, specifically Sampson, that the juror was willing to lie repeatedly. It found that this was not an intentional concealment. And that in Sampson, there was other evidence of partiality or risk of partiality that, taken as a whole, led to the conclusion that the juror was subject to a strike for cause. Yeah, I think you do have to make totality of evidence. I think the fact that those answers were not given or were given incomplete or were given incorrectly is a factor the district court has to consider. I think a fair reading of its opinion is that it did consider that and it found, even in light of the number of questions that he failed to answer, that, nevertheless, there was not evidence behind them of an improper motive of bias or of other reasons for him to be struck or of anything else that would have interfered on the record that was presented at the evidentiary hearing with Porter's right to trial by impartial jurors. I may have a moment on my notes. If I may have a moment on my notes. Sure, you go ahead. Thank you. Thank you. Mr. Doley, what's the status of the Virginia death penalty statute? The statute was repealed effective July 1st. How does that impact this case at all? Immediately, the statutes under which a death sentence could be carried out were also repealed, so there's no mechanism for carrying out a death penalty at this point in Virginia. What does that mean here? The sentence can't be carried out? A death sentence cannot be carried out. Under the present law? Yes, Your Honor. It's not clear the way the statute was written whether it was intended to have automatic effect. It says that any outstanding sentences shall be changed to life imprisonment. I think there's a question whether that was meant to be self-executing or whether that's subject to someone bringing a motion in the trial court to enter a changed order. To my knowledge, no changed order has been entered in this court. That might be subject to litigation then. That might be. Very good. Go ahead. Finish your argument. Thank you. The other point I did want to touch on is the district court did find an answer to, and I apologize, I forget whose question it was, about the family members themselves being grounds for strike. In each case where a potential juror answered yes to one or more or all three of these questions, trial counsel did not move to strike them based on that. So there were other jurors that answered yes to all three of these questions, that they had family members who had been in prison, that they had a family member who had committed assault, and that they had family members who were police officers or law enforcement? By the district court's count, there were two jurors who said yes to all questions and both ultimately sat on the jury. Two jurors that answered all three of those questions in the affirmative. Yes. And one juror that answered the law enforcement question specifically with a father, brother, and son, and there was no motion to strike for cause. There was no motion. So the judge didn't have a chance to rule. Yes, Your Honor. And the judge didn't rule on his own or her own. Okay. But I think it does inform, to the extent we're trying to do a retrospective inquiry, what would have happened at trial had the information Mr. Treacle, Juror Treacle, did not provide had that been provided at the time. So I think the district court's decision is supportable and should be affirmed based simply on the fact that there were no grounds for a valid strike for cause. But I think ultimately the analysis that there's no evidence of bias or partiality or other impairment to his ability to sit as a fair juror answers the underlying question, McDonough, and the other cases that are cited, and that habeas relief on that claim is not warranted. The district court's decision should be affirmed. Thank you very much, sir. We appreciate it. Mr. French? Thank you, Your Honor. If I may, I just want to address, first of all, the two jurors who answered affirmatively to your questions. Just to put it in perspective, one of those jurors disclosed that his brother had been mugged at one point. The crime was that he had sold alcohol to minors 12 years earlier, and he had an uncle who was a corrections officer in Erie, Pennsylvania. The other juror testified that he had been robbed. He was arrested when he was 17 years old at a prom picnic, which the trial court made light of, and he was a consultant to HUD developing a security plan for a public housing project. I would argue that these disclosures don't remotely compare to the volume of information that Juror Treacle failed to disclose. It also just bears mentioning the fact that you had one juror who mentioned the fact that he was arrested as a 17-year-old. I won't say puts a lie, but Juror Treacle testified that although he didn't think about any family members at all, he specifically didn't think about the fact that his son had been arrested and spent time in jail and on probation on drug charges just a few years before trial. He talked that up because, well, he was a juvenile. Well, here we have another juror in his presence who's talking about the fact that that happened when Juror Treacle's son was 16 or 17 years old. So again, it's one of those reminders in real time. And his response to that was something like he wasn't paying any attention and didn't understand what the other jurors said, which goes to your argument that he really was not up to the task of being a juror. That's absolutely correct, Your Honor. I mean, he first of all says, I didn't think about them. I didn't listen to what they were saying. And when we asked for clarification, he said, well, I probably listened, but I didn't comprehend. These weren't difficult things to comprehend that somebody has various members in law enforcement or had been subject to arrest. But Judge Hudson said he's credible. And he credited what he said. And you have to convince us that it's clear error at finding. And I think it is clear error, Your Honor, when we just look at it. Because I think part of what we have here, the benefit of is not speculating about what would have impacted him when he was sitting there, whether things would have had an impact on his ability to be impartial. We have very facts that are indisputable. There were three questions that he just flat out didn't answer that were specifically calling for family members. What the district court in Williams v. The first question, honestly, needs to be viewed in light of the failure to answer the second question. And the failure to answer those questions need to be viewed in light of the fact that he also failed to disclose information in response to a third question. In that case, the juror, the prospective juror, failed to disclose one family member or one individual with respect to. Before you run out of time, what is the practical implication of what it is you're asking us to do if we do agree with you? What would happen? What happens next? We think the court would find that he was deprived of a Sixth Amendment right to a fair trial, and he would be entitled to a new trial. That would be the natural outcome. The one last point I want to make is about, I don't think we're faulting anybody for the fact that it was 12 years after trial, but I will point out that that was not our doing because we requested discovery in an evidentiary hearing back in 2009 and didn't get one until this court remanded it in 2018. When we talk about the fact that reasonable doubts need to be made in favor of the accused and not the juror, I think that's an important point to emphasize to the extent there are reasonable doubts, that shouldn't fall on Mr. Porter as the criminal defendant here. It should be used against the juror, which is entirely consistent. The juror had a faulty memory from the inception, if you believe him. And all that was taken into account by Judge Hudson. I think he took it into account, but as again, I would argue that all he was really crediting was after the fact of speculation and supposition and really did not grapple with in any meaningful way, the internal inconsistencies in juror Treacle's testimony. With that, I'll conclude. Thank you. Thank you very much. We appreciate the council's work in this case, and we'll take it under advisement. If we weren't still in this pandemic, we'd come down and shake hands with the council and tell you how much we appreciate your time and your work. We appreciate you coming to our circuit and hope you have your back. And I'll say all that. And with that, we'll turn to the lesser section from one of my colleagues. We'll turn to the next case. You gentlemen may be excused. Thank you.
judges: Robert B. King, Stephanie D. Thacker, Pamela A. Harris